IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

RAEQUON DEWRELL ALLEN,

                        Plaintiff,                          OPINION AND ORDER

     v.

                                                       16-cv-410-wmc

DEPUTY RICHARDSON,

                        Defendant.

---

*Pro se* plaintiff Raequon Dewrell Allen is proceeding in this civil lawsuit against defendant Deputy Alexa Richardson on an excessive force claim arising out of Allen's intial altercation with another prisoner at the Dane County Jail on January 28, 2016. Currently before the court are plaintiff Allen's motion for reconsideration of the court's order denying his request for sanctions (dkt. #72), as well as his new motion under Rule 37(e) (dkt. #102), and defendant Richardson's motion for summary judgment (dkt. #61). For the reasons that follow, the court will deny all pending motions, and this case will proceed to trial on February 11, 2019. The court will also reset the Final Pretrial Conference to take place by telephone on **Friday February 1, 2019**, at **10:00 a.m.**, with defense counsel responsible for initiating the call.

I. **Allen's motion for reconsideration (dkt. #72) and motion under Rule 37(e) (dkt. #102)**

On April 27, 2018, the court denied Allen's motion for sanctions related to his request for video footage of the altercation on January 28, 2016. While acknowledging that the video had been overwritten in February of 2016 under the Dane County Sheriff's

Office's routine practice -- overwriting surveillance footage that has not been saved to a DVD within 25 to 35 days -- the court explained that Allen had failed to show anyone at the sheriff's office had reason to know he would file a lawsuit arising out of that incident. (Dkt. #69, at 5-6.) Allen now seeks reconsideration of that order based on additional facts, but the court remains unpersuaded that sanctions are appropriate.

Federal Rule of Civil Procedure 37 permits the court to sanction a party who fails to preserve evidence and was under a duty to do so. Such a duty arises when a party knows or should know that litigation is imminent. *Trask-Morton v. Motel 6 Operating, L.P.*, 534 F.3d 672, 681 (7th Cir. 2008). In circumstances in which electronically stored information was lost because a party failed to take reasonable steps to preserve it, the court may: (1) upon finding prejudice, order measures no greater than necessary to cure the prejudice; or (2) upon finding of intent to deprive another party of information, presume the information was unfavorable, instruct the jury of this presumption or dismiss the action. Fed. R. Civ. P. 37(e)(1)-(2).

In support of his motion for reconsideration, Allen now submits a grievance and an appeal of the denied grievance that he filed after the January 28, 2016, incident. Indeed, his initial grievance is dated the same day as the incident itself. In it, Allen explicitly requested a copy of the camera footage. (Ex. A (dkt. #72-1).) Moreover, his appeal was dated February 8, 2016, in which he wrote that "[d]ue to this problem not being properly resolved I am going to pursue legal action." (Ex. B (dkt. #72-2).) In Allen's view, the language in his grievance and appeal were sufficient to trigger a duty to preserve the video footage.

2

Unsurprisingly, defendant disagrees, arguing that his grievance or initial notice of an intent to sue did not trigger a duty to preserve the video because the jail receives approximately 140 grievances each month, and the jail's budget simply cannot support the practice of saving video footage related to every grievance. Rather, the jail's policy is to preserve video footage (1) upon receipt of a Notice of Claim or a summons and complaint, or (2) in circumstances involving criminal acts, death or serious injury. Given the relative ease and limited cost of transferring video to a DVD, the defendant's response is unsatisfying at best, but the court remains unpersuaded that sanctions are appropriate.

While the court accepts that preserving *every* video of events that may relate to a grievance may be both impractical and unnecessary, the short, default retention period before writing over video is also problematic. In fact, prisoners who are in the process of attempting to obtain relief using the jail's administrative remedies during that brief retention period are vulnerable to losing potentially important, if not dispositive, footage simply because they are following the prerequisites to filing a federal lawsuit, much less filing a lawsuit, just as Allen is here. Furthermore, while the decision to overwrite footage within a 25-35 day time period might be tied to budgetary constraints, the court is troubled by the fact that this time frame is significantly shorter than the 120-day time period a plaintiff has to file a Notice of Claim, *see* Wis. Stat. § 893.82(3). In these circumstances, the court rejects the notion that Allen's grievance could not trigger a duty to preserve. On the contrary, Allen's February 8, 2016, appeal of his grievance should have made it sufficiently clear to the sheriff's office that legal action was imminent. Even assuming (without resolving) that this knowledge can be fairly imputed to an individual Deputy

Sheriff, like Richardson, however, sanctions are not appropriate.

*First*, Allen has not made a sufficient showing of likely prejudice to warrant sanctions under Rule 37(e)(1). Allen served no requests for documents or discovery related to the existence of a video, and neither party has suggested that there actually was video footage taken of the general area where the incident took place, much less that the video footage actually captured the incident or would have conclusively established that Allen should succeed on his claim. Defendant's response does not even suggest that anyone at the sheriff's office or Richardson ever actually viewed footage of the area where the incident took place, much less of the incident itself. Additionally, Allen is not prejudiced insofar as he has been able to submit evidence describing his version of the event in his deposition and affidavit opposing defendant's motion for summary judgment. Moreover, even accepting that Allen suffered prejudice, the sanction Allen desires -- judgment in his favor and the money judgment he requested in his complaint -- is disproportionately greater than necessary to cure the prejudice.

*Second*, an adverse inference instruction under Rule 37(e)(2) is inappropriate because Allen has not submitted any evidence suggesting that the video was overwritten in a bad faith effort to avoid the negative ramifications of the video. *See Trask-Morton v. Motel 6 Operating, L.P.*, 534 F.3d 672 (7th Cir. 2008) (a showing of bad faith is a "prerequisite to imposing sanctions for the destruction of evidence") (citation omitted). Since nothing before the court suggests that to be the case here -- rather, at most, the video was overwritten pursuant to an erroneously narrow timeframe -- the court sees no basis upon

which to sanction defendant.[1]

## II.   Richardson's motion for summary judgment (dkt. #61)

UNDISPUTED FACTS[2]

On January 28, 2016, Allen was serving a sentence at that Dane County Jail.[3] Having spent time in the Dane County Jail on previous occasions, Allen was familiar with its policies and procedures. Among the Jail's policies are requirements that prisoners must (1) conduct themselves in a respectful manner and (2) avoid contact with staff or other prisoners, including fights and disorderly conduct.

The night before the January 28, 2016, incident, Allen was housed in an eight-person general population cellblock (Cellblock 607) with another prisoner named Daymon Frazier. Allen and Frazier began arguing, prompting Allen telling Frazier that he would "beat his ass" the next morning. (Allen dep. (dkt. #67) at 79.) At about 5:00 a.m. on the next morning, as Allen and Frazier were eating breakfast, Allen took his meal tray and

---

[1] Should Allen have made a formal request for preservation of the video in anticipation of litigation, or even have provided stronger proof that a video of the incident likely existed when he requested to see it as part of the grievance process, the result may well have been different, as the rapidly declining cost of video storage belies Dane County Jail's excuse for not retaining it longer than 30 days.

[2] The following facts are material and undisputed unless otherwise noted. The court has drawn these facts from the parties' proposed findings of fact and responses to those facts, as well as the underlying evidence, as needed.

[3] Apparently, Allen was serving a jail sentence after being revoked for violations in Dane County, Wisconsin, Case No. 2013CF757. While Allen purports to dispute this fact in his response to defendant's proposed findings of fact, he simply adds that he had two other pending cases in Dane County Circuit Court, Case No. 2015CF979 and 13CF757. The fact that Allen may not have been specifically sentenced to jail time in Case Nos. 2015CF979 does not alter the material fact that, as of January 28, 2016, Allen was serving a sentence in the Dane County Jail.

swung it, hitting Frazier in the face. This caused Frazier to jump across the table, and Allen and Frazier to begin fighting each other, both of them throwing punches and eventually slipping and falling to the ground. Eventually, Allen was able to sit on Frazier's chest; and while Frazier struggled to stop him, Allen proceeded to take swings at Frazier's face.

Deputy Michael Corrigan, who was serving breakfast in the cellblock that morning, called for all available deputies and yelled for all of the other prisoners to lock down in their cells. Deputy Alexa Richardson responded to the call for help and also yelled for the other inmates to lock down in their cells. After Richardson confirmed that all other inmates were locked down, Corrigan entered the cellblock to stop the altercation. Corrigan then stepped in physically, pressing his weight against Allen's back in an effort to push Allen closer to Frazier, thereby making it more difficult for Allen to continue to strike Frazier.

This much of the incident is essentially undisputed. From here, however, the parties' version of events diverge. Corrigan and Richardson claim that before Corrigan stepped in physically, they both directed Allen and Frazier to stop fighting, but they continued to brawl.[4] Next, defendant maintains that despite Corrigan's weight on Allen's back, he continued to resist; at which point, Richardson stepped in to help Corrigan stop the fight. Richardson, who it is undisputed weighs significantly less than Allen, says that she positioned herself at Allen's and Frazier's feet and applied two strikes to Allen's lower

---

[4] Defendant recently filed a supplement to her reply to her proposed findings of fact, adding proposed facts related to Frazier's version of events that corroborated Corrigan and Richardson's version. (Dkt. #96.) Setting aside the fact that defendant failed to seek leave of court to supplement the record, and that Allen has not responded, the fact remains that Allen disputes defendant's version of events. Adding another witness into the mix does not change that fact.

6

back with her right hand. According to Richardson, she then paused to see if her two strikes had the desired effect. When she saw that Allen was undeterred, she struck Allen three more times on the back. At that point, three more deputies entered the cellblock, pulling Allen off of Frazier. Allen was then handcuffed and escorted to another cellblock.

During his deposition Allen was unable to remember all the details of the altercation, but he did claim to remember the following general timeline and provided further clarification in his affidavit.[5] Allen testified as an initial matter that he could not remember anyone telling them to stop fighting. (Allen dep. (dkt. #67) at 60-61.) According to Allen, however, Corrigan put him in cuffs *before* he even pressed his weight against him. (*Id.* at 61.) Then:

> when he was laying on us, the other officer -- whoever's laying on me or the other officers came in, once the officers got my head down and they got us down to the ground, everything's cool. They was trying to get -- I guess their little procedures on getting us out of there. That's when she come in. "Stop resisting" and get to trying to work me like she know how to fight.

(*Id.* at 61.)

In his affidavit, Allen similarly states that: (1) he only heard Richardson yell "stop resisting" after Corrigan was sitting on his back and he had been handcuffed; (2) he never

---

[5] Richardson argues that the court should not consider Allen's statements in his affidavit because he could not remember the details of events during his deposition. "As a general rule, the law of this circuit does not permit a party to create an issue of fact by submitting an affidavit whose conclusions contradict prior deposition or other sworn testimony." *Buckner v. Sam's Club, Inc.*, 75 F.3d 290, 292 (7th Cir. 1996) (citations omitted). Even so, supplemental affidavits may be appropriate to "clarify ambiguous or confusing deposition testimony." *Id.* (citing *Adelman-Tremblay v. Jewel Companies, Inc.*, 859 F.2d 517, 520-21 (7th Cir. 1998)). While Allen's more precise statements in his affidavit certainly will subject him to impeachment at trial to the extent his testimony and averment are inconsistent, Allen's testimony and affidavit are not contradictory with respect to the order of events. Accordingly, the court generally considered both pieces of evidence to be in concert for purposes of summery judgment.

7

actually resisted and Corrigan had him in handcuffs and was sitting on his back, so it was impossible for him to resist; (3) Richardson punched him repeatedly without pausing in between strikes; and (4) he was never offered any medical attention, even though he was in severe pain. (Allen Aff. (dkt. #79) ¶¶ 9-11.) As a result, Allen claims that he cannot play sports the way that he used to, and he has trouble sleeping because of back pain, but he has neither submitted medical records nor provided details about the nature of his back injury to support his claims.

OPINION

Since Allen was serving a sentence at the Dane County Jail on January 28, 2016, his excessive force claim falls under the Eighth Amendment,[6] which protects prisoners from officials' use of excessive physical force. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). For a plaintiff to succeed on an excessive force claim, he must submit evidence that the prison official acted "wantonly or, stated another way, 'maliciously and sadistically for the very purpose of causing harm.'" *Harper v. Albert*, 400 F.3d 1052, 1065 (7th Cir. 2005) (quoting *Whitley v. Albers*, 475 U.S. 312, 320 (1986)).

Relevant factors to consider in weighing the evidence are: (1) the need for the application of force; (2) the relationship between the need and the amount of force used; (3) the extent of injury inflicted; (4) the extent of threat to the safety of staff and inmates,

---

[6] At screening, the court operated on the assumption that Allen was a pretrial jail detainee, and thus, the Fourteenth Amendment applied to his claim. As the record has now established, Allen was, in fact, serving a sentence as of January 28, 2016, which means the Eighth Amendment applies to his claim.

8

as reasonably perceived by the responsible officials based on the facts known to them; and (5) any efforts made to temper the severity of a forceful response. *Whitley*, 475 U.S. at 321. Because prison officials must sometimes use force to maintain order, the central inquiry is whether the force "was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7.

At summary judgment, a plaintiff must put forward evidence that would "support a reliable inference of wantonness in the infliction of pain." *Fillmore v. Page*, 358 F.3d 496, 504 (7th Cir. 2004) (quoting *Whitley*, 475 U.S. at 322). While this is a close call given the circumstances as a whole, including Allen being the undisputed initiator of a dangerous prison fight, in the relatively unlikely event that a jury were to believe his version of events, it would not be unreasonable for the jury to find that Richardson's allegedly repeated, gratuitous punches were intended to inflict pain, rather than to restore order.

As an initial matter, while Richardson does not argue the point explicitly, much of her argument focuses on the minimal nature of Allen's injury. In the past, the Court of Appeals for the Seventh Circuit has accepted that "Eighth Amendment claims based on *de minimus* uses of physical force by prison guards are not cognizable unless they involve 'force that is repugnant to the conscience of mankind.'" *Outlaw v. Newkirk*, 259 F.3d 833, 839 (7th Cir. 2001 (quoting *Hudson*, 503 U.S. at 9-10.) However, more recently the court has clarified that there is no *de minimus* force requirement because the Eighth Amendment does not include a "significant injury requirement," and the use of the term *"de minimus"* in *Hudson* reflected the necessary distinction between common law battery claims and constitutional claims of excessive force. *Washington v. Hively*, 695 F.3d 641, 642 (7th Cir.

9

2012); *Guitron v. Paul*, 675 F.3d 1044, 1046 (7th Cir. 2012). In *Guitron*, the Seventh Circuit even emphasized that "[w]hen a physical injury occurs as the result of force applied in the course of prison operations, as happened to Guitron, the courts should approach the matter as *Whitley* and *Hudson v. McMillian* direct, rather than trying to classify injuries as *de minimus*." 675 F.3d at 1046. This court must, therefore, follow suit, and conclude that at the crux of Allen's claim are factual disputes that a jury will have to resolve with respect to whether physical injury was imparted, of whatever degree.

While the parties disagree on this record whether there was any need for force, the court concludes that *some* force by Richardson was certainly appropriate to bring the fight between Allen and Frazier to an end and regain control over both of them. Allen insists that he was no longer resisting, with his hands cuffed behind his back by the time Richardson began to strike him repeatedly in his back for no reason than to inflict pain. Of course, Richardson denies this. Even accepting that Allen was handcuffed, Richardson further argues that undisputed facts suggest that the struggle between Allen, Frazier and the officers was ongoing, thus justifying her physical intervention. Indeed, Allen does not dispute that he had started a fight with Frazier, creating a significant security threat in the jail. Nor does Allen dispute that by the time Corrigan physically interjected himself, he had successfully climbed on top of Frazier, and while sitting on his chest, repeatedly pummeled Frazier with his fists. While Corrigan had apparently pressed his body against Allen in an effort to curb his ability to punch Frazier by the time Richardson entered the cellblock, Corrigan was still sitting on top of Allen in effort to control both Allen and Frazier. Even assuming that Corrigan had been able to handcuff Allen by the time

10

Richardson had contact, therefore, the situation that Richardson was walking into continued to be unsafe, and she may have reasonably believed further physical force was needed to gain Allen's full compliance. No evidence in the record suggests that it would have been obvious to Richardson that Allen was no longer resisting. In fact, even Allen admits that Richardson directed him to "stop resisting." Based on this record, therefore, the court rejects Allen's argument that *no* force was warranted after Richardson entered the cellblock.

In considering the second factor, however, Allen's description of the type of force Richardson used *might* permit a reasonable jury to conclude that her use of force was disproportionate to what the circumstances warranted, and exhibited a malicious intent to cause harm. As Allen describes it, he was handcuffed behind his back and no longer resisting, but Richardson still repeatedly punched him on the back, without pausing. Again accepting Allen's version of events wholesale, *punching* Allen repeatedly and without pause in his back, even as he was sandwiched between Corrigan and Frazier *and* handcuffed behind his back, *could* be reasonably construed as malicious.

While a close one, the Seventh Circuit has encouraged such calls to be sumitted to the trier of fact. For example, in *Mitchell v. Krueger*, 594 F. App's 874 (7th Cir. 2014), a case that Richardson cites, the court found that factual disputes precluded summary judgment as to whether guards used excessive force in transporting the plaintiff in restraints. 594 F. App'x 874 (7th Cir. 2014). There, the undisputed facts showed that the plaintiff started a fight with another prisoner, and that one officer tackled the plaintiff to stop him from fighting. After the plaintiff was handcuffed, the plaintiff alleged that a

second officer used excessive force during his transport. While the court agreed that judgment in the first defendant's favor was appropriate, the second officer's actions required a trial. The court noted in particular that the plaintiff "was restrained with his hands behind his back, flanked on either side by the defendants holding his arms, at least one of whom was more than 100 pounds heavier and a half a foot taller than Mitchell." *Id.* at 877. In that light, the court concluded that disputed evidence related to the second officer's subsequent use of force, after the plaintiff had been restrained, required a trial. *Id.* Applying that reasoning here, while Richardson claims that Allen was still resisting when she intervened, Allen claims that he was handcuffed and calm, which would permit a reasonable jury to conclude that her punches were malicious.

Richardson also relies on *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 668 (7th Cir. 2012), but this decision also works against her. In *Rice*, the court affirmed summary judgment in favor of a correctional officer that used pepper spray in an effort to stop prisoners from fighting. While Richardson argues that this case emphasizes the significant threat that prisoner altercations present, the record before the court in that case left no doubt that the prisoner was still noncompliant when the officer employed the pepper spray. *Id.* at 668 (plaintiff did not dispute that he "had been fighting with his cellmate or that he failed to comply with the directive that he step out of his cell"). For the reasons already explained, the court cannot conclude as a matter of fact that Allen was noncompliant, rendering this decision inapposite here.

The Seventh Circuit's affirmance of summary judgment in an officer's favor in *Caffey v. Maue*, 679 F. App'x 487, 489 (7th Cir. 2017), is just another example of why judgment

12

cannot be entered in Richardson's favor. In *Caffey*, the plaintiff was descending a flight of stairs during a transport, lost his balance, leaned against the handrail, and asked to slow down. One of the defendants then allegedly struck the plaintiff with a wooden stick. When the plaintiff eventually got to the bus, he complained that his head hurt, prompting another defendant who overheard this to grab the plaintiff's head, pressing it against a window, and shackle his feet. *Id.* Even though the plaintiff repeatedly complained about his head injury, the defendant then ignored him. In reviewing the district court's entry of summary judgment in defendants' favor, the Seventh Circuit reversed with respect to the officer who struck the plaintiff with a stick, but affirmed with respect to the officer that shackled the plaintiff, reasoning that *some* force was necessary in placing a prisoner in restraints, and no other facts suggested that that defendant was acting with the intent to cause harm. *Id.* at 491-92.

While Richardson would emphasize the court's conclusion that the officer that shackled the plaintiff needed to use *some* force, the force actually employed by that officer was pushing and pressing the plaintiff against a window while transporting him. In contrast, the court's discussion of the officer who struck the plaintiff with a stick is more akin to Richardson's, at least if one accepts Allen's version of the facts, because both officers were allegedly *striking* the prisoner in question.

Finally, in *Guitron*, as defendant points out, the Seventh Circuit affirmed the district court's dismissal of an excessive force claim in circumstances in which officers slammed the plaintiff against the wall to get him to walk to his cell. 675 F.3d at 1045-46. During the transport, one of the officers had used additional force to bend Guitron's wrist after he

13

refused to move. As a result, by the time plaintiff reached his cellblock, his wrist was swollen, red and skinned. *Id*. While the court recognized that the officer's use of additional force could seem unreasonable in retrospect, the evidence of record showed that it was a "good-faith" attempt to *restore* order. *Id.* The court elaborated that "an error of judgment does not convert a prison security measure into a constitutional violation." *Id.* at 1046.

In comparison to the circumstances here, however, Allen maintains that order had already been restored, that he was no longer resisting when Richardson intervened, and Richardson's decision to punch plaintiff was not just an error of judgment. Again, while *some* force may have been necessary to assist Corrigan in breaking up the fight, questions about exactly how incapacitated Allen was when Richardson intervenes precludes a finding, as a matter of law, that Richardson's punches were a good faith attempt to restore order.

In short, factual disputes preclude the court from concluding as a matter of law on summary judgment that Richardson did not act with the malicious intent to injure Allen. Likewise, since those disputes relate to what Richardson may have intended when she punched Allen, it follows that Richardson is not entitled to qualified immunity on these facts. *See, e.g., Hill v. Shelander*, 992 F.2d 714, 718 (7th Cir. 1993) ("[I]f the finder of fact were to decide that [defendant] acted with malicious intent, there could be no question that a reasonable prison sergeant should reasonably have known that the conduct described by [plaintiff] violated the Eighth Amendment.").[7] Accordingly, Richardson's motion must be denied and this lawsuit will proceed to trial.

---

[7] Given the factual disputes and that under Allen's version of events he was a passive victim, the United States Supreme Court's recent decision in *Escondido v. Emmons*, No. 17-1660 2019 WL 113027, at 3 (U.S. Jan. 7, 2019), does not affect this result.

ORDER

IT IS ORDERED that:

1. Plaintiff Raequon Allen's motion for reconsideration (dkt. #72) and motion under Rule 37(e) (dkt. #102) are DENIED.

2. Defendant Alexa Richardson's motion for summary judgment (dkt. #61) is DENIED.

3. The Final Pretrial Conference in this matter is reset to a telephonic conference to take place on **Friday February 1, 2019**, at 10:00 a.m., with defense counsel responsible for initiating the call.

Entered this 8th day of January, 2019.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge